UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RICARDO TORRES,

               Plaintiff,

     -v-

ARAMARK FOOD AND COMMISSARY
SERVICES OF THE ORANGE COUNTY CORR.
FACILITY, and CARL DUBOIS, ORANGE
COUNTY SHERIFF,

          Defendants.

Case No. 14-CV-7498 (KMK)

OPINION & ORDER

---

Appearances:

Ricardo D. Torres
*Pro se Plaintiff*
Willard, NY[1]

Joseph P. Wodarski, III, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
Stamford, CT
*Counsel for Defendant Aramark Food and Commissary*
*Services of the Orange County Correctional Facility*

KENNETH M. KARAS, District Judge:

     Ricardo D. Torres ("Plaintiff"), proceeding pro se, initiated this action against Aramark

Correctional Services, LLC ("Defendant") alleging claims arising under 42 U.S.C. § 1983 for

---

[1] Mail sent to Plaintiff's last known address at Downstate Correctional Facility on April 17, 2015 was returned on April 28, 2015. (*See* Dkt. (minute entry for Apr. 28, 2015).) Plaintiff has not submitted an updated address despite being informed that "it is Plaintiff's obligation to promptly submit a written notification to the Court if Plaintiff's address changes, and the Court may dismiss the action if Plaintiff fails to do so." (*See* Order of Service 2 (Dkt. No. 7).)

violations of his rights under the First and Eighth Amendments.[2]  Defendant moves to dismiss

pursuant to Rule 12(b)(6).  For the following reasons, Defendant's Motion is granted in part and

denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and are taken as true

for the purpose of resolving the instant Motion.  The events giving rise to this action began on

June 30, 2014, while Plaintiff was incarcerated at Orange County Correctional Facility

("OCCF").  (Am. Compl. 2–3 (Dkt. No. 9).)[3]  On that date, Plaintiff began receiving "kosher"

meals prepared by Defendant in accordance with the Islamic observance of Ramadan.  (*Id.* at 3.)

The religious diet included a morning meal, consisting of a half-pint of milk, a hardboiled egg,

two slices of bread, four ounces of cereal, two sugars, one teabag, and either an apple or orange.

(*Id.*)  Plaintiff alleges that some mornings he received a small quantity of peanut butter and jelly

as a "substitute," but he does not allege what it was a substitute for, nor does he allege what he

received as a post-sunset meal.  (*Id.*)  Furthermore, Plaintiff asserts that he was not allowed to

purchase certain halal food at the commissary to supplement his meals.  (*Id.*)  Plaintiff asserts

---

[2] Plaintiff also named Carl DuBois as a Defendant.  (*See* Am. Compl. 1 (Dkt. No. 9).)
However, no attorney has entered a notice of appearance on Mr. DuBois's behalf, and it is not
apparent from the docket that he has been served.
     Plaintiff brought this action against "Aramark Food and Commissary Services of the
Orange County Corr. Facility;" however, counsel for Aramark has indicated that it was
erroneously so named and is instead known as "Aramark Correctional Services, LLC."  (*See,
e.g.*, Notice of Mot. To Dismiss Compl. (Dkt. No. 20).)

[3] Here and elsewhere, for ease of reference, the Court cites to the ECF-generated page
numbers on the top right of Plaintiff's Amended Complaint.

that the Ramadan menu provided by Aramark fell below "a 2000 calorie based diet" and was therefore insufficient "to properly maintain focus p[h]ysically[] and mentally" during the period of "fasting from dawn to dusk."  (*Id.*)

Plaintiff did not file a formal or written grievance, but alleges that he made numerous verbal complaints to prison officials concerning the adequacy of meals.  (*See id*. at 3–4.) Plaintiff also alleges that, in response to his complaints, officials "promised [that the issues] would be taken care of by the next shift or meal."  (*See id.* at 4.)  Plaintiff alleges that, in addition to notifying officers at every meal, he wrote to Aramark Food Director, William Vaughn, and to OCCF's Programs Department but did not receive a response.  (*Id.* at 5.)  When Plaintiff's numerous complaints went unaddressed, he requested to be removed from the Ramadan menu, insisting that the meals provided by Aramark, "ultimately forced . . . Muslims that were exercising [their] religious beliefs to demand to be taken off the kosher diet."  (*Id.* at 3, 5.) Plaintiff alleges that, as a result of the meals, he suffered "[h]eadaches as well as unnecessary aggravated stress[] and [a]nguish," and was "mentally tormented and spiritually distress[ed]." (*Id.* at 3.)

B.  Procedural Background

Plaintiff filed his initial complaint on September 16, 2014, (*see* Dkt. No. 1), along with a request to proceed in forma pauperis, (*see* Dkt. No. 2).  Plaintiff's request to proceed in forma pauperis was granted on October 1, 2014.  (*See* Dkt. No. 5.)  Plaintiff then filed an Amended Complaint on November 3, 2014.  (*See* Dkt. No. 9.)  Defendant wrote a letter requesting a pre-motion conference on January 7, 2015, (*see* Dkt. No. 13), to which the Court directed Plaintiff to respond by February 5, 2015, (*see* Dkt. No. 17).  Plaintiff not having responded, Defendant again

wrote to the Court on February 6, 2015 seeking permission to file a motion.  (*See* Dkt. No. 18.)

The Court set a briefing schedule requiring Defendant to file its Motion To Dismiss by March 1,

2015, Plaintiff to file his Opposition by April 1, 2015, and Defendant to file its Reply by April

22, 2015.  (*See* Dkt. No. 19.)  Defendant filed its Motion To Dismiss and accompanying papers

on February 27, 2015.  (*See* Dkt. Nos. 20–23.)  Plaintiff then wrote to the Court in a letter dated

March 26, 2015 asking for an extension of the April 1, 2015 deadline until April 27, 2015, which

the Court granted.  (*See* Dkt. No. 24.)  However, as of the date of this Opinion, Plaintiff has not

submitted his Opposition, nor has he had any other contact with the Court.  Moreover, mail sent

by the Court to Plaintiff's listed address on April 17, 2015 was returned as undeliverable because

Plaintiff was released from custody, (*see* Dkt. (minute entries for Apr. 17, 2015 and Apr. 28,

2015)), and Plaintiff has not provided the Court with an updated address despite being told that it

was his obligation to do so and that the Court may dismiss the case if he fails to do so, (*see* Order

of Service 2 (Dkt. No. 7)).

## II.  Discussion

### A.  Standard of Review

Defendant moves to dismiss Plaintiff's Amended Complaint under Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  "While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds

of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555

(2007) (citations, internal quotation marks, and alterations omitted).  Indeed, Rule 8 of the

Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-

4

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal

quotation marks and alterations omitted). Instead, a complaint's "[f]actual allegations must be

enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff

has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[]

complaint must be dismissed," *id; see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense. But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation

omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8

marks a notable and generous departure from the hyper-technical, code-pleading regime of a

prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more

than conclusions.").

   "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see

also Dixon v. United States*, No. 13-CV-2193, 2014 WL 23427, at *1 (S.D.N.Y. Jan. 2, 2014)

("For the purpose of this motion to dismiss, we assume that the facts alleged in [the plaintiff's]

complaint are true."). Further, "[f]or the purpose of resolving [a] motion to dismiss, the

Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T&M Prot. Res., Inc.*, No. 13-CV-4384, 2014 WL 182341, at *1 n.1 (S.D.N.Y. Jan. 16, 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Hendrix v. City of N.Y.*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Because Plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, No. 12-CV-6666, 2013 WL 5863561, at *2 (S.D.N.Y. Oct. 31, 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks removed)).

B.  Analysis

Defendant moves to dismiss Plaintiff's Amended Complaint on several grounds:   (i) that Plaintiff failed to exhaust his claims; (ii) that Defendant is not a state actor or acting under state

6

law; (iii) that Plaintiff has failed to plead a deprivation under the Eighth Amendment because he did not allege a sufficiently serious deprivation or that Defendant acted with deliberate indifference; (iv) that Plaintiff failed to allege that his religious beliefs were substantially burdened as is required to state a First Amendment claim; and (v) that Plaintiff failed to allege the existence of any policy or practice that caused the alleged harms under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  (*See generally* Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s Mem.") (Dkt. No. 22).)

The Court notes that Defendant does not raise the issue of qualified immunity, so it declines to address it at this stage.  *See Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984) (holding that qualified immunity "is an affirmative defense that must be pled by the official who claims it"); *cf. Betts v. Shearman*, No. 12-CV-3195, 2013 WL 311124, at *4 (S.D.N.Y. Jan. 24, 2013) ("[I]t is appropriate to decide the issue of qualified immunity, *when raised*, at an early stage of the litigation, such as when deciding a pre-answer motion to dismiss." (emphasis added)), *aff'd*, 751 F.3d 78 (2d Cir. 2014).  Moreover, the Court notes that Defendant has included, and relies in part on, a document outside the Amended Complaint—an affidavit from the current Aramark food service director for OCCS.  (*See* Decl. of Joseph Wodarski, Esq. ("Wodarski Decl.") Ex. B (Aff. of Deanna Henderson) (Dkt. No. 21).)  However, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken," *Leonard F.*, 199 F.3d at 107 (internal quotation marks omitted), as well as documents that "are integral to the complaint," *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations and internal quotation

marks omitted).  There is no basis whatsoever for the Court to consider this document in

deciding the Motion To Dismiss, and it is therefore disregarded.

     1.  Exhaustion

     Defendant argues that Plaintiff failed to exhaust administrative remedies pursuant to the

Prison Litigation Reform Act of 1995 ("PLRA"), which provides that "[n]o action shall be

brought with respect to prison conditions under [§] 1983 . . . by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are

exhausted."  42 U.S.C. § 1997e(a).  The Second Circuit has made clear that, in this context,

"administrative exhaustion is not a jurisdictional predicate," but rather "failure to exhaust is an

affirmative defense."  *Giano v. Goord,* 380 F.3d 670, 675 (2d Cir. 2004).  Accordingly,

"defendants bear the burden of proof[,] and prisoner plaintiffs need not plead exhaustion with

particularity."  *McCoy v. Goord,* 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003); *see also Miller v.*

*Bailey,* No. 05-CV-5493, 2008 WL 1787692, at *3 (E.D.N.Y. Apr. 17, 2008) (explaining that the

exhaustion requirement "must be pleaded and proved by a defendant").  Furthermore, the Second

Circuit has recognized particular exceptions to the exhaustion requirement apply when:

"(1) administrative remedies are not available to the prisoner; (2) defendants have either waived

the defense . . . or acted in such a[] way as to estop them from raising the defense; or (3) special

circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the

prisoner's failure to comply with the exhaustion requirement."  *Ruggiero v. Cty. of Orange,* 467

F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).[4]

---

     [4]  The Court notes that there is some question surrounding whether this three-pronged
inquiry remains appropriate following the Supreme Court's decision in *Woodford v. Ngo*, 548
U.S. 81 (2006).  In *Woodford*, the Supreme Court held that the PLRA's exhaustion requirement

Therefore, a claim should only be dismissed for failure to exhaust if "non[-]exhaustion is clear

from the face of the complaint, and none of the exceptions outlined by the Second Circuit are

germane." *Lovick v. Schriro,* No. 12-CV-7419, 2014 WL 3778184, at *4 (S.D.N.Y. July 25,

2014) (alterations and internal quotation marks omitted); *see also Lee v. O'Harer,* No. 13-CV-

1022, 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for

failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and

incorporated documents."); *Sloane v. Mazzuca,* No. 04-CV-8266, 2006 WL 3096031, at *4

(S.D.N.Y. Oct. 31,  2006) ("[B]y characterizing non-exhaustion as an affirmative defense, the

Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by

way of a motion to dismiss." (internal quotation marks omitted)).

---

mandates not merely "exhaustion *simpliciter*" but rather "proper exhaustion," which "demands
compliance with an agency's deadlines and other critical procedural rules." *See Woodford*, 548
U.S. at 83, 88, 90.  The Second Circuit has acknowledged that the second and third *Hemphill*
prongs may no longer be applicable in light of *Woodford*. *See Amador v. Andrews*, 655 F.3d 89,
102 (2d Cir. 2011) ("Subsequent decisions have questioned the continued viability of this
framework following the Supreme Court's decision in *Woodford* . . . ."); *Ruggiero*, 467 F.3d at
176 ("We need not determine what effect *Woodford* has on our case law in this area, however,
because [the plaintiff] could not have prevailed even under our pre-*Woodford* case law."); *see
also Khudan v. Lee*, No. 12-CV-8147, 2015 WL 5544316, at *4 n.2 (S.D.N.Y. Sept. 17, 2015)
("Following the Supreme Court's decision in Woodford, . . . the Second Circuit has noted,
without holding, that the second and third prongs of the *Hemphill* analysis—estoppel and special
circumstances—may no longer be applicable.").  The Court, however, finds it instructive that
"the Second Circuit conducted a *Hemphill* analysis in *Amador* itself, 655 F.3d at 102–04, and
district courts in this Circuit have continued to apply the *Hemphill* framework following
*Woodford* and *Amador*." *Garvin v. Rivera*, No. 13-CV-7054, 2015 WL 876464, at *3 (S.D.N.Y.
Feb. 28, 2015); *see also Rambert v. Mulkins*, No. 11-CV-7421, 2014 WL 2440747, at *11
(S.D.N.Y. May 30, 2014) (noting that "the Second Circuit has left unresolved the continuing
vitality of the *Hemphill* exceptions in light of the Supreme Court's ruling in *Woodford v. Ngo*,"
but concluding that "*Hemphill* remains good law").  Consequently, "[u]ntil the Second Circuit
instructs otherwise, the Court will continue to consider the three *Hemphill* exhaustion
exceptions." *McClinton v. Connolly*, No. 13-CV-2375, 2014 WL 5020593, at *2 n.4 (S.D.N.Y.
Oct. 8, 2014).

Here, under subsection IV of the Amended Complaint, titled "Exhaustion of Administration Remedies," Plaintiff indicates that he did not file a grievance in accordance with OCCF administrative procedure.  (Am. Compl. 3–4.)  However, Plaintiff further alleges he "[complained to] housing unit officers every meal" and was told that "it would be taken care of."  (*Id*. at 4–5.)  According to Plaintiff, these verbal complaints were never addressed.  (*Id.* at 4.)  Finally, Plaintiff alleges he wrote to the Aramark Food Director, William Vaughn, and Sergeant Smith of the Programs Department, but received no response.  (*Id*. at 5.)  However, Plaintiff alleges that when he attempted to file a grievance, he "was [d]enied one to file."  (*Id*. at 4.)  These allegations suggest that there may be special circumstances that justify Plaintiff's failure to exhaust his administrative remedies.  *See Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 546–47 (S.D.N.Y. 2015) (denying the defendant's motion to dismiss on exhaustion grounds because the complaint contained allegations that prison supervisors refused to accept grievances); *Correa v. Hastings*, No. 13-CV-5862, 2014 WL 6468985, at *12 (S.D.N.Y. Nov. 18, 2014) (denying the defendant's motion to dismiss on exhaustion grounds because "the plaintiff was first misled by a prison employee about whether he could file a grievance, and then reasonably, but incorrectly, relied on an apparently corroborative [Department of Correctional Services] directive"); *Smith v. City of N.Y.*, No. 12-CV-3303, 2013 WL 5434144, at *27 (S.D.N.Y. Sept. 26, 2013) (concluding that "special circumstances may justify [the plaintiff's] failure to exhaust his administrative remedies because . . . [the officer] allegedly misrepresented that his issue was non-grievable"); *O'Connor v. Featherston,* No. 01-CV-3251, 2002 WL 818085, at *2 (S.D.N.Y. Apr. 29, 2002) (holding that non-exhaustion may be excused in circumstances "where it is alleged that corrections officers failed to file the inmate's grievances

or otherwise impeded or prevented his efforts").  Accordingly, based on the allegations in the

Amended Complaint, it is not clear that the exceptions to the exhaustion requirement do not

apply to Plaintiff's claims, and, therefore, Defendant's Motion To Dismiss on exhaustion

grounds is denied.

### 2.  Acting Under Color of State Law

Next, Aramark argues that Plaintiff's claims against it must be dismissed because it is not

a state actor.  To state a claim for any constitutional violation under § 1983, a plaintiff must

allege that "a person acting under color of state law deprived him or her of a right secured by the

Constitution or laws of the United States."  *Oliveira v. Price Law Firm*, No. 14-CV-4475, 2014

WL 4088199, at *2 (S.D.N.Y. July 30, 2014); *see also McGugan v. Aldana-Bernier*, 752 F.3d

224, 229 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1703 (2015) ("To state a claim under § 1983, a

plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of

state law."); *Schiff v. Suffolk Cty. Police Dep't*, No. 12-CV-1410, 2015 WL 1774704, at *5

(E.D.N.Y. Apr. 20, 2015) (same).  "Because the United States Constitution regulates only the

Government, not private parties, a litigant claiming that his constitutional rights have been

violated must first establish that the challenged conduct constitutes state action."  *Flagg v.

Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks

omitted).  "[S]tate action requires *both* an alleged constitutional deprivation caused by the

exercise of some right or privilege created by the State or by a rule of conduct imposed by the

State or by a person for whom the State is responsible, *and* that the party charged with the

deprivation must be a person who may fairly be said to be a state actor."  *Id.* (alteration in

original) (internal quotation marks omitted).  Thus, in order to survive a motion to dismiss, "a

11

plaintiff must allege he was injured by either a state actor or private party acting under the color

of state law." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002).

Here, Plaintiff brings suit alleging constitutional violations against Aramark, a private

entity. Therefore, the Court must assess whether Plaintiff has adequately alleged that he was

injured by a private party acting under color of state law. In the Second Circuit, there are three

circumstances under which a private entity is said to act under color of state law. The Second

Circuit has described these circumstances as follows:

> For the purposes of [§] 1983, the actions of a nominally private entity are
> attributable to the state when: (1) the entity acts pursuant to the "coercive power"
> of the state or is "controlled" by the state ("the compulsion test"); (2) when the state
> provides "significant encouragement" to the entity, the entity is a "willful
> participant in joint activity with the [s]tate," or the entity's functions are "entwined"
> with state policies ("the joint action test" or "close nexus test"); or (3) when the
> entity "has been delegated a public function by the [s]tate," ("the public function
> test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008). "The

fundamental question that underlies each of these tests is whether the challenged actions of the

private actor are 'fairly attributable' to the state." *Watson v. Grady*, No. 09-CV-3055, 2015 WL

2168189, at *9 (S.D.N.Y. May 7, 2015) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838

(1982)). Although Plaintiff has arguably offered little in terms of facts that bear upon the

question directly, the Amended Complaint nonetheless includes sufficient material for the Court

to find the presence of state action under either the close nexus or public function tests.

Specifically, Plaintiff alleges that Defendant prepared the Ramadan meals for the Orange County

jail facility. (Am. Compl. 3.) Additionally, when Plaintiff complained to jail personnel about

the adequacy of the food prepared by Defendant, the jail personnel told him that they would take

12

care of it, thus potentially implying that the jail may have had some control over the food prepared by Defendant.  (*See id.* at 4.)  There is therefore no need to consider whether state action may also be found under the compulsion test.

### a.  Close Nexus Test

To satisfy a claim under the "close nexus" test, a plaintiff must allege "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself."  *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (internal quotations omitted).  In determining whether such a nexus exists, courts must "analyze whether the state can be fairly held responsible for private conduct by virtue of the ties between the state and private actor."  *Pagan v. Westchester Cty.*, No. 12-CV-7669, 2014 WL 982876, at *24 (S.D.N.Y. Mar. 12, 2014) (internal quotation marks omitted); *see also Preston v. New York*, 223 F. Supp. 2d 452, 465 (S.D.N.Y. 2002), *aff'd sub nom. Preston v. Quinn*, 87 Fed. App'x 221 (2d Cir. 2004) (same).  Courts have found such a nexus where a private organization performs services that "flow[] directly from the obligations of the government entity and [are] performed under its supervision."  *Pagan*, 2014 WL 982876, at *25; *see also West v. Atkins*, 487 U.S. 42, 54 (1988) (finding state action where a physician provided medical services to inmates pursuant to a contract with the state); *Wilson v. Phoenix House*, No. 10-CV-7364, 2011 WL 3273179, at *3 (S.D.N.Y. Aug. 1, 2011) (concluding that the defendant in-patient substance abuse treatment center was state actor under the close nexus test).  Perhaps unsurprisingly, a number of courts have found that, where Aramark contracts with a prison to provide food to inmates, a sufficiently close nexus exists.  *See, e.g.*, *Best v. Aramark Corr. Servs., LLC*, No. 14-CV-243, 2014 WL 4980553, at *3 (S.D. Ind. Oct. 6, 2014) (applying close nexus test in context

of the plaintiff's claim that Aramark "failed to provide him with constitutionally adequate meals" and concluding that it "[could not] hold that Aramark is not a state actor in these circumstances subject to liability under § 1983."); *Pagan*, 2014 WL 982876, at *24 ("[T]here is a sufficiently close nexus between the County . . .  and Aramark's actions such that the conduct of Aramark is attributable to the state itself."); *Jubeh v. Dart*, No. 11-CV-3873, 2011 WL 6010267, at *2 (N.D. Ill. Nov. 29, 2011) ("Aramark has voluntarily assumed the function of providing nutritionally adequate food to inmates and may be subject to [§] 1983 liability if its conduct violated the inmate's constitutional right to adequate food."); *Jones v. Aramark Food Servs.*, No. 11-CV-15, 2011 WL 3203524, at *5 n.3 (D.N.J. July 27, 2011) (describing the close nexus test and concluding that "[t]he [c]omplaint appears to allege facts that Aramark . . . may have been acting under color of state law, as required to state a § 1983 claim").  *But see James v. Correct Care Solutions*, No. 13-CV-19, 2013 WL 5730176, at *8–9 (S.D.N.Y. Oct. 21, 2013) (concluding Aramark was not a state actor where employed to provide food services at Westchester County Jail).

Here, a sufficiently close nexus exists because it would be fair to hold the state responsible for the private conduct at issue by virtue of the ties between the state and Aramark. *See Pagan*, 2014 WL 982876, at *24.  Aramark, apparently acting pursuant to a contract, prepared the Ramadan meals for the Orange County Jails.  (*See* Am. Compl. 3.)  Moreover, jail personnel allegedly were prepared to field Plaintiff's complaints about the food.  (*See id.* at 4.) Consequently, because the arrangement between the jail and Aramark allowed the jail, in effect, to shift one of its obligations to Aramark, the Court finds that the nexus between the two is sufficient to plausibly impute state action to Aramark.  *See Pagan*, 2014 WL 982876, at *25.

14

<u>b.  Public Function Test</u>

Even if state action could not be found under the close nexus test, it would nonetheless exist due to the public function test.  Under that test, the conduct of an otherwise private party will be treated as state action if it is "so clearly governmental in nature as to amount to a public function." *Jordan v. Fed. Bureau of Prisons*, No. 09-CV-8561, 2013 WL 1143617, at *12 (S.D.N.Y. Mar. 19, 2013).  "The mere fact that a private actor is paid by state funds, or is hired by a state actor, is insufficient to establish state action" under the public function test.  *Emanuel v. Griffin,* No. 13-CV-1806, 2013 WL 5477505, at *5 (S.D.N.Y. Oct. 2, 2013).  "The public function test as applied is quite stringent and under the doctrine 'an extraordinarily low number of . . . functions' have been held to be . . . 'public.'"  *Doe v. Harrison*, 254 F. Supp. 2d 338, 343 (S.D.N.Y. 2003) (quoting *Ruhlmann v. Ulster Cty. Dep't of Soc. Servs.*, 234 F. Supp. 2d 140, 166 (N.D.N.Y. 2002)).  Nevertheless, a number of courts to have considered the question have concluded that "[p]roviding food service . . . to . . . incarcerated people is one part of the government function of incarceration," thus rendering food service providers state actors for purpose of § 1983 analysis.  *See McCullum v. City of Phila.*, No. 98-CV-5858, 1999 WL 493696, at *3 (E.D. Pa. July 13, 1999); *see also Sutton v. City of Phila.*, 21 F. Supp. 3d 474, 482 (E.D. Pa. 2014) (same); *Pagan*, 2014 WL 982876, at *24 (same).  Indeed, many—although not all—courts to have considered the question have concluded that Aramark, when it feeds prisoners, is a state actor under the public function test.  *See, e.g.*, *Pagan*, 2014 WL 982876, at *24 ("Aramark is serving a public function in providing daily meals to inmates."); *Smego v. Aramark Food Servs. Corp.*, No. 10-CV-3334, 2013 WL 1987262, at *6 (C.D. Ill. May 13, 2013) ("The Aramark [d]efendants are state actors because they have voluntarily assumed the obligation to fulfill an

15

essential state function: feeding detainees in a state facility."); *Jubeh*, 2011 WL 6010267, at *2 (finding that a county "has a duty to provide nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to detainees' health and well being," and concluding Aramark was a state actor where that duty was outsourced to it (alterations and internal quotation marks omitted)).  *But see James*, 2013 WL 5730176, at *9 (noting the public function test but concluding that the complaint offered no basis to treat Aramark as a state actor).

Because providing food to inmates is a public function, *see Pagan*, 2014 WL 982876, at *24, and because Plaintiff's Amended Complaint relates to the meals that Aramark, acting as the state's culinary surrogate, provided to the prisoners, (*see* Am. Compl. 3), the Court concludes that Plaintiff has plausibly alleged that Aramark is a state actor for purposes of this case.  Thus, the Court turns to the merits of Plaintiff's constitutional claims.

### 3.  Eighth Amendment Claim

The Eighth Amendment guarantees freedom from "cruel and unusual punishment."  U.S. Const., amend. VIII.  In prisons, inmates have the right to be free from conditions of confinement that impose an excessive risk to inmate health or safety.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  In order to establish a violation of the Eighth Amendment, an inmate must demonstrate that (1) the challenged condition is objectively serious, and (2) the official responsible acted with deliberate indifference to inmate health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002).

16

a.   Objective Prong

To satisfy the objective prong, a plaintiff must demonstrate an "unquestioned and serious deprivation of basic human needs" or of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981).  "[Although] no court has explicitly held that denial of food is a *per se* violation of a prisoner's Eighth Amendment rights," the Second Circuit has found that the Constitution "require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it."  *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir. 1983).  "To establish a valid claim that the denial of food . . . constitutes an Eighth Amendment violation, one must establish that there was a 'sufficiently serious condition' that resulted from the food not being received."  *Evans v. Albany Cty. Corr. Facility,* No. 05-CV-1400, 2009 WL 1401645, at *9 (N.D.N.Y. May 14, 2009).  A condition is serious for constitutional purposes if it presents "a condition of urgency that may result in degeneration or extreme pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted); *see also Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir. 1996) (explaining that "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists" (internal quotation marks omitted)).

The allegations in the Amended Complaint fail to satisfy the objective requirement that Plaintiff suffered from a "condition of urgency . . . that may produce death, degeneration, or extreme pain."  *See Hathaway*, 99 F.3d at 553 (internal quotation marks omitted).  Plaintiff's allegation that he suffered "headaches as well as unnecessary aggravated stress[] and anguish,"

are insufficient to demonstrate the physical pain and suffering characteristic of a condition of urgency. *Compare Pagan*, 2014 WL 982876, at *17 (holding that allegations that food caused severe stomach pain, nausea, vomiting, diarrhea, and weight loss were sufficient to state a claim of serious deprivation), *on reconsideration*, 2015 WL 337403 (S.D.N.Y. Jan. 26, 2015); *Lunney v. Brureton*, No. 04-CV-2438, 2005 WL 121720, at *6 (S.D.N.Y. Jan. 21, 2005) (holding that allegations that the plaintiff was provided, on a daily basis, food that was spoiled and poorly prepared were sufficient to satisfy the objective prong of an Eighth Amendment claim), *with Lewis v. Zon*, 920 F. Supp. 2d 379, 387–88 (W.D.N.Y. 2013) (holding that allegations that the plaintiff was refused food during the Jewish holy days were insufficient to show he "suffered an urgent condition risking degeneration or extreme pain" because he had not alleged he "experienced any pain, discomfort, or medical problems"), *appeal dismissed* (Jan. 13, 2014); *Maurice v. N.Y.C. Dep't of Corr.,* No. 93-CV-6008, 1997 WL 431078, at *3 (S.D.N.Y. July 30, 1997) (holding that the plaintiff had not alleged that he suffered from a sufficiently serious medical condition to implicate Eighth Amendment concerns where he alleged only that he suffered from stomach cramps and diarrhea as a result of eating a non-vegetarian meal).

Nor has Plaintiff adequately alleged that the headaches and mental anguish he experienced threatened his health or safety. *Cf. Chance*, 143 F.3d at 702 (holding that the plaintiff pleaded a condition of urgency when he alleged that "he has been unable to chew properly, and that he has choked on his food"); *Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir. 1996) (explaining that although the plaintiff's loss of depth perception does not inevitably entail pain, it nonetheless meets the test of "suffering" and created a condition of urgency because "visual deficiencies can readily cause a person to fall or walk into objects"). First, conditions which

18

cause passing headaches rarely rise to the level of seriousness required to state a claim under the Eighth Amendment. *See, e.g.*, *Eldridge v. Williams*, No. 10-CV-423, 2013 WL 4005499, at *11 (S.D.N.Y. July 30, 2013) (concluding that "symptoms such as headaches, irritated and watery eyes, and breathing problems . . . [,] although clearly ones that have caused Plaintiffs discomfort and worry, do not rise to the level of seriousness as required to violate the Eighth Amendment"); *Washington v. City of N.Y.*, No. 10-CV-389, 2011 WL 566801, at *2 (S.D.N.Y. Feb. 15, 2011) (finding that "pain in the face, constant nose bleeds and headaches" were not "the sort of urgent, severe, life threatening, or degenerative condition or extreme pain that would objectively establish the requisite sufficiently serious condition" (internal quotation marks omitted)); *Davidson v. Scully*, No. 81-CV-390, 2001 WL 963965, at *8 (S.D.N.Y. Aug. 22, 2001) (concluding that headaches allegedly caused by inadequate eyeglass prescriptions "[were] not a sufficiently serious condition under the Eighth Amendment"). In fact, courts have more specifically held that headaches caused by lowered caloric intake during Ramadan do not violate the Eighth Amendment. *See Garnica v. Wash. Dep't of Corr.*, 965 F. Supp. 2d 1250, 1266 (W.D. Wash. 2013) (finding no Eighth Amendment claim where the plaintiff suffered from, among other things, headaches due to low caloric content of prison Ramadan meals); *Powers v. Wash. Dep't of Corr.*, No. 11-CV-5806, 2013 WL 1755790, at *13 (W.D. Wash. Mar. 29, 2013), *adopted by* 2013 WL 1755787 (W.D. Wash. Apr. 24, 2013) (concluding that, "[e]ven if the [c]ourt were to assume that [the plaintiff's] ailments [including headaches] were related to the food, or lack of food, served during Ramadan 2010, there is nothing to indicate that these ailments were serious enough to endanger [his] health or safety"); *cf. Heard v. Finco*, No. 13-CV-373, 2014 WL 2920479, at *4 (W.D. Mich. June 27, 2014) (noting that headaches during

19

Ramadan are unsurprising, given that "a Ramadan observant for[]goes food and drink for substantial periods of time each day").  Likewise, Plaintiff's general claim of mental anguish, without more, does not implicate the objective prong of the Eighth Amendment.  *See, e.g.*, *Blackson v. City of N.Y.*, No. 14-CV-452, 2014 WL 6772256, at *4 (S.D.N.Y. Dec. 2, 2014) (concluding that the "[p]laintiff's general allegations that he became 'stressed out,'" among other things, were, by themselves, insufficient to state a claim); *Read v. Town of Suffern Police Dep't*, No. 10-CV-9042, 2013 WL 3193413, at *6 n.5 (S.D.N.Y. June 25, 2013) (noting that the "[p]laintiff's anxiety attacks were likely not sufficiently serious to satisfy the objective component of the 'deliberate indifference' analysis"); *Powell v. Fed. Bureau of Prisons*, No. 08-CV-199, 2009 WL 3160124, at *4 (S.D.W. Va. Sept. 25, 2009) ("[The] [p]laintiff merely alleges that she has suffered 'mental anguish' as a result of the . . . conditions of confinement.  [Her] claim of mental anguish, however, is insufficient to satisfy the Eighth Amendment's objective component.")  Finally, Plaintiff makes no allegations suggesting that Defendant compromised his health or well-being by continuously depriving him of a medically required diet, as Plaintiff alleged that he was returned to the sufficient non-Ramadan diet after he complained.  Therefore, Plaintiff has failed to allege an objectively serious condition.

### b.  Subjective Prong

Plaintiff also has insufficiently pleaded the subjective element required to state a claim under the Eighth Amendment.  To meet the subjective requirement, the plaintiff must show that the defendant acted with "more than mere negligence."  *Farmer,* 511 U.S. at 835.  The Second Circuit has held that "the [defendant's] state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with

deliberate indifference to inmate health." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir.

2006).  Deliberate indifference "requires that the charged official act or fail to act while actually

aware of a substantial risk that serious inmate harm will result." *Nielson v. Rabin*, 746 F.3d 58,

63 (2d Cir. 2014) (quoting *Salahuddin*, 467 F.3d at 280); *see also Hathaway v. Coughlin*, 37

F.3d 63, 66 (2d Cir. 1994) (stating that "a prison official does not act in a deliberately indifferent

manner unless that official knows of and disregards an excessive risk to inmate health or

safety").  "The subjective 'deliberate indifference' element ensures that the defendant prison

official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 184

(2d Cir. 2003).

     The pleadings do not plausibly allege that Defendant was aware of, or recklessly

disregarded, Plaintiff's allegations relating to the inadequacy of the Ramadan diet.  In particular,

the only allegation in the Amended Complaint that could plausibly support an inference that

*Defendant* (as opposed to prison officials) knew about the alleged inadequacy of the meals was

that Plaintiff wrote a letter to Aramark Food Director William Vaughn, (Am. Compl. 5), but

Plaintiff fails to allege what he told Vaughn, and he therefore has failed to plausibly allege that

Defendant was aware of or recklessly disregarded an excessive risk to Plaintiff's health and

safety.  *See Farmer*, 511 U.S. at 837 (holding that a prison official cannot be found liable "unless

the official knows of and disregards an excessive risk to inmate health or safety"); *Caiozzo v.

Koreman*, 581 F.3d 63, 70 (2d Cir. 2009) (holding that the plaintiff must prove "that

government-employed defendant disregarded a risk of harm to the plaintiff of which the

defendant was aware"); *cf. Phelps*, 308 F.3d at 186 (explaining that deliberate indifference to

inmate health or safety may be shown where a defendant should have known a diet was

inadequate and likely to cause pain and suffering).  Likewise, even if the Court were to assume

that the statements Plaintiff made to prison officials were then passed on to Aramark, the

Amended Complaint provides no detail concerning the content of those complaints.  (*See* Am.

Compl. 4–5.)  Moreover, while the Complaint lists the contents of the Plaintiff's morning meal,

Plaintiff does not plausibly allege that the morning meal was so obviously inadequate that

Defendant should have known that it posed a substantial risk to inmate health and safety.  And

because Plaintiff alleges nothing at all about the post-sundown meal, there can be no Eighth

Amendment claim based on that meal.

For the foregoing reasons, Plaintiff fails to state a claim for cruel and unusual punishment

under the Eighth Amendment.

### 4.  First Amendment Claim

Defendant argues that Plaintiff also fails to plausibly allege that his First Amendment

rights were violated.  (*See* Def.'s Mem. 9–10.)  The Court disagrees.  It is well-established that

inmates are afforded constitutional protection to practice their religion under the First

Amendment.  *See O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (holding that

"[i]nmates clearly retain protections afforded by the First Amendment, including its directive

that no law shall prohibit the free exercise of religion"); *Ford v. McGinnis,* 352 F.3d 582, 588

(2d Cir. 2003) (explaining that "[p]risoners have long been understood to retain some measure of

the constitutional protection afforded by the First Amendment's Free Exercise Clause").

In particular, the Second Circuit has held "that prison authorities must accommodate the

right of prisoners to receive diets consistent with their religious scruples."  *Kahane v. Carlson,*

527 F.2d 492, 495 (2d Cir. 1975); *see also McEachin v. McGuinnis,* 357 F.3d 197, 203 (2d Cir.

22

2004) (explaining that to "deny prison inmates the provision of food that satisfies the dictates of their faith . . . unconstitutionally burden[s] their free exercise rights"); *Ford*, 352 F.3d at 597 ("We . . . have clearly established that a prisoner has a right to a diet consistent with his or her religious scruples . . . ."); *Crichlow v. Fischer*, No. 12-CV-7774, 2015 WL 678725, at *3 (S.D.N.Y. Feb. 17, 2015) ("Generally, an inmate is entitled to a reasonable accommodation of his religious beliefs, including religious dietary beliefs."). There is some uncertainty as to the test applied to such claims. In particular, "[i]t has not been decided in [the Second] Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014) (internal quotation marks omitted). "However, [the Court] need not decide the issue here, as even assuming the continued vitality of the substantial burden requirement," Plaintiff has plausibly alleged that his religious exercise was unconstitutionally burdened. *Id.*

Plaintiff alleges that he is Muslim and that the nutritional inadequacy of the Ramadan meals, combined with the inability to supplement the meals with food from the commissary, forced him to switch from the Ramadan diet. (*See* Am. Compl. 3.) Plaintiff has plausibly alleged that his sincerely held religious beliefs were substantially burdened, as "a substantial burden exists where the state 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (alteration in original) (quoting *Thomas v. Review Bd. of the Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)); *see also Holland*, 758 F.3d at 221 (noting that "a Muslim inmate's free exercise rights would be substantially burdened if prison officials denied his request for a meal to celebrate the Eid ul-Fitr

23

feast").  Here, Plaintiff has not merely pleaded a de minimis violation, for example, missing one or two meals; rather, he has alleged that he was forced to choose between eating nutritionally adequate meals and complying with his religious fasting requirements.  *Compare Jean-Laurent v. Los*, No. 12-CV-132, 2015 WL 1015383, at *6  (W.D.N.Y. Mar. 9, 2015) (holding that missing two of the Ramadan meals does not constitute a violation of the plaintiff's First Amendment rights); *Washington v. Afify,* 968 F. Supp. 2d 532, 537–38 (W.D.N.Y. 2013) (holding that the denial of three consecutive Ramadan meals, including two breakfasts and one evening meal, does not violate First Amendment); *Ward v. Goord,* No. 06-CV-1429, 2009 WL 102928, at *9 (N.D.N.Y. Jan. 13, 2009) (holding that "[t]he failure to provide a single [kosher] meal is insufficient to allege a constitutional violation"); *Thomas v. Picio*, No. 04-CV-3174, 2008 WL 820740, at *8 (S.D.N.Y. Mar. 26, 2008) (holding that the denial of all kosher meals for an isolated period of eight days was not a substantial burden which was actionable), *with Lovelace v. Lee,* 472 F.3d 174, 187–89 (4th Cir. 2006) (holding that that a prisoner's free exercise rights were substantially burdened when a disciplinary policy excluded him from special Ramadan meals during nearly the entire duration of the holy month); *Pagan*, 2014 WL 982876, at *20 (holding that the plaintiff plausibly asserted a free exercise claim based on denial of religious food because the complaint alleged that the only food that complied with the plaintiff's religious beliefs was rotten or undercooked); *Houston v. Schriro*, No. 11-CV-7374, 2013 WL 4457375, at *8 (S.D.N.Y. Aug. 20, 2013) (holding that the plaintiff's free exercise rights were substantially burdened when he was forced to choose between low sodium meals and the halal food required by Islam); *McEachin*, 357 F.3d at 203 (holding that the plaintiff's First

Amendments rights were violated when the defendant deprived him of halal food for the entire month of Ramadan).

Once a plaintiff has alleged at the "threshold that the disputed conduct substantially burdens his sincerely held religious beliefs," "defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." *Salahuddin*, 467 F.3d at 274–75.  The plaintiff must then demonstrate that the articulated concerns are irrational.  *Id.* at 275.  "In making a reasonableness determination, courts must consider four factors: 'whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating the right; and the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests.'"  *Williams v. King*, 56 F. Supp. 3d 308, 322 (S.D.N.Y. 2014) (quoting *Salahuddin*, 467 F.3d at 274), *order clarified*, 56 F. Supp. 3d 389 (S.D.N.Y. 2014).  Based on Plaintiff's allegations, which involve more than de minimis deprivation of adequate Ramadan meals, and in the absence of any argument from Defendant that its actions were justified by legitimate penological interests, the Court concludes that Plaintiff plausibly alleged a First Amendment violation.  *See Pagan*, 2014 WL 982876, at *20 ("Taking all factual allegations in the [s]econd [a]mended [c]omplaint as true, the [j]ail's provision of inedible halal food and the provision of a religiously forbidden food item as an alternative may have [burdened] these inmates' ability to practice their religion without a reasonable justification."); *Houston*, 2013 WL 4457375, at *8 (holding that the plaintiff's claims survived when he plausibly alleged a substantial burden on his free exercise

"because [the] [d]efendants have not met their resulting burden under either the First Amendment or [the Religious Land Use and Institutionalized Persons Act]").[5]  Therefore, Plaintiff's First Amendment Claim should not be dismissed on this ground.

## 5.  Existence of Policy or Practice for *Monell* Claim

Defendant also moves to dismiss the Amended Complaint because, it argues, Plaintiff has not adequately pled a causal link between the alleged § 1983 violation and an alleged custom or policy.  (Def.'s Mem. 8–9.)  Although, as discussed, a private actor like Defendant may be treated as a state actor for purposes of a claim brought pursuant to § 1983, "[p]rivate employers are not liable under § 1983 for the constitutional torts of their employees unless the plaintiff proves that action pursuant to official policy of some nature caused a constitutional tort."  *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) (alterations, citations, and internal quotation marks omitted).  In determining whether or not a private employer may be held liable in a § 1983 claim, courts are guided by the principles articulated in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and its progeny.  *See*, *Rojas*, 924 F.2d at 409 ("Although *Monell* dealt with municipal employers, its rationale has been extended to private businesses."); *see also Gitter v. Target Corp.*, No. 14-CV-4460, 2015 WL 5710454, at *3 (S.D.N.Y. Sept. 29, 2015) ("The Second Circuit has extended *Monell*'s rationale to private businesses"); *Dilworth v. Goldberg*, No. 10-CV-2224, 2011 WL 3501869, at *24 (S.D.N.Y. July 28, 2011), *adopted by* 2011 WL 4526555 (S.D.N.Y. Sept. 30, 2011) ("[C]ase law has extended

---

[5]  Defendant may well have strong fact-based defenses on this point as described in its affidavit; however, at the Motion to Dismiss stage, the Court does not consider them.

the *Monell* doctrine to private § 1983 defendants acting under color of state law." (alterations and internal quotation marks omitted)).

In order to prevail on a *Monell* claim, "a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *cf. Salvatierra v. Connolly*, No. 09-CV-3722, 2010 WL 5480756, at *10 (S.D.N.Y. Sept. 1, 2010) (dismissing claim against municipal agencies where the plaintiff did not allege that any policy or custom caused the deprivation of his rights), *adopted by* 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011); *Arnold v. Westchester Cty.*, No. 09-CV-3727, 2010 WL 3397375, at *9 (S.D.N.Y. Apr. 16, 2010) (dismissing claim against the county because the complaint did "not allege the existence of an unconstitutional custom or policy"), *adopted sub nom. Arnold v. Westchester Cty. Dep't of Corr.*, 2010 WL 3397372 (S.D.N.Y. Aug. 15, 2010).  The fifth element reflects the notion that a *Monell* defendant "may not be held liable under § 1983 solely because it employs a tortfeasor."  *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of N.Y.*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right.").  In other words, a *Monell* defendant may not be liable under § 1983 "by application of the doctrine of respondeat superior."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity itself commits a wrong").  Instead, there must be a "direct causal link between a municipal policy or custom and

the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnmental bodies can act only through natural persons, . . . [and] governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

Apart from its claims that Defendant is not a state actor, (*see* Def.'s Mem. 5–6), and that Plaintiff has failed to allege plausible First and Eighth Amendment claims, (*see id.* at 6–8, 9–10) thus implicating the first two elements, Defendant further argues that Plaintiff has failed to allege a policy or custom sufficient to support a *Monell* claim, (*see id.* at 8–9). A plaintiff may satisfy the "policy or custom" requirement by alleging:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). In the end, "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Roe*, 542 F.3d at 37 (quoting *Brown*, 520 U.S. at 404); *see also Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue."); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing

28

of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the City."); *Johnson v. City of N.Y.*, No. 06-CV-9426, 2011 WL 666161, at \*3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

At this stage, of course, Plaintiff need not prove these elements, but he must still plead them sufficiently to make out a plausible claim for relief.  Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, *see Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (alteration in original) (internal quotation marks omitted).  Thus, to survive the Motions To Dismiss, Plaintiff cannot merely allege the existence of a municipal policy or custom but "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists."  *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012).

Plaintiff has met this burden here.  The Amended Complaint does not assert that Plaintiff was deprived of a sufficient diet by virtue of, for instance, administrative difficulties or intermittent errors but rather because the "kosher diet menu" regularly and predictably provided inadequate nutrition.  (*See* Am. Compl. 3.)  *Cf. Sutton*, 21 F. Supp. 3d at 484–85 (concluding that Aramark's failure to occasionally provide vegetarian meals to prisoner was not the result of any of Aramark's policies or customs but rather because of an administrative error flowing from the

29

plaintiff's transfer between correctional facilities).  Indeed, Plaintiff argues that Aramark's practice was so widespread that it "ultimately forced many if not all of [the] Muslim[] [inmates] [who] were exercising [their] religious beliefs to demand to be taken off the kosher diet."  (Am. Compl. 3.)  It is difficult to conclude that such assertions do not—at the very least circumstantially—plausibly support the inference that a sufficient policy or custom exists.  *See Santos*, 847 F. Supp. 2d at 576 (providing that *Monell* claim "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists" to survive a motion to dismiss); *see also Best*, 2014 WL 4980553, at *3 ("[The plaintiff's] assertion that 'Aramark is not providing nutritionally adequate food on a regular basis . . . ' is sufficient at the pleading stage to allege a 'custom or usage' on the part of Aramark to provide constitutionally inadequate meals"); *Jubeh*, 2011 WL 6010267, at *3 (rejecting contention that no custom or policy underlay the plaintiff's complaints that meals provided by Aramark to inmates arrived "without protective covering" and "with foreign substances in them" where practice was "widespread" and existed since 2009).  Consequently, Plaintiff has stated a sufficient *Monell* claim to withstand Defendant's Motion to Dismiss.

## III.  Conclusion

For the foregoing reasons, the Court grants Defendant's Motion To Dismiss without prejudice with respect to Plaintiff's Eighth Amendment claim and denies it in all other respects.  (*See* Dkt. No. 20.)  Within 30 days from the date of this Opinion, Plaintiff may have one final opportunity to amend his complaint, addressing the deficiencies identified herein.  Moreover,

Plaintiff is reminded that it is his burden to keep the Court apprised of his current address and

failure to do so is grounds for dismissal.

SO ORDERED.

Dated:     December 16, 2015
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

31